Judge Pamela K. Chen
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn NY, 11201

November 22, 2023

Re: **1:23-CV-04775(PKC)(LB)**
*Weller v. Icahn School of Medicine et al.*

## **Plaintiff's Request for a Conference Prior to Seeking Preliminary Injunctive Relief**

*Pro se* Plaintiff Alexander Weller, M.D., respectfully requests that this Court schedule a conference to discuss Plaintiff's anticipated motion for preliminary injunctive relief. As a result of Defendants' retaliation against Plaintiff when Plaintiff raised complaints protected under the Fair Labor Standards Act and New York Labor Law, Plaintiff is now suffering financial injury, and is also unable to practice his profession; current Mt. Sinai employees have been wrongfully misinformed of their legal entitlement to compensation for work performed after their scheduled shift. Thus, it would be inequitable for Plaintiff to continue to be victimized by Defendants' egregious actions during the pendency of this action.

**Background**
As fully described in the First Amended Complaint (hereinafter, all paragraph numbers refer to the First Amended Complaint), Plaintiff was employed as a part-time, per diem hospitalist physician at Mt. Sinai Queens Hospital in 2022. On November 6, 2022, Plaintiff worked 30 minutes after his scheduled shift, and requested compensation for the same (¶43). Immediately thereafter, Plaintiff's direct manager, the Chair of the Department of Medicine, Dr. Kathy Navid, emailed Plaintiff that "unfortunately, we don't do any overtime costs for docs and Pas [sic] in the health system so the 30 min isn't covered." (¶45). After Plaintiff informed Dr. Navid of Mt. Sinai's obligation to compensate Plaintiff for these 30 minutes, she replied "If the time to handoff is not covered please let me know if you want to proceed with taking shifts because I need to make contingency plans. Our oncoming doctors usually come 15 mins early…". (¶49).

Soon thereafter, Dr. Navid indicated that she was imposing new time reporting requirements on Plaintiff, accused Plaintiff of violating corporate policy by leaving work early one day, and of making a false entry on a timesheet. (¶57). Plaintiff immediately demanded that Dr. Navid stop retaliating against Plaintiff for having made a protected complaint under the FLSA/NYLL, but the retaliation did not stop. In response, Dr. Navid emailed senior leadership at Mt. Sinai, including Defendant Clarissa Jones-Winter, Associate Dean for Faculty, Staff, and Trainee Relations, "The PAs [sic] complained about how he is intimidating to them and it's already such a difficult job for them. The quality of his work is fair at best. I need legal assistance to cut ties as this email seems like a good opportunity… This isn't worth it even with the desperate situation. How can I proceed here?" (¶67). Soon thereafter, Defendants continued to retaliate against Plaintiff, as described in the FAC, and Plaintiff was essentially forced to resign.

Although Plaintiff was working part-time while completing his full-time studies in law school, part-time work was sufficient to cover Plaintiff's monthly expenses (rent, food, health insurance, etcetera). Plaintiff is now under financial distress because of a lack of employment and is distressed by the inability to practice his profession; hospitals typically require that physicians have minimal gaps in employment.

**Legal Basis for Preliminary Injunctive Relief**

It is self-evident to all parties that all Defendants are subject to the FLSA and NYLL, including its prohibitions against retaliation[1]. As described above and more fully in the FAC, Defendants did take materially adverse action against Plaintiff, manifested a clear intent to retaliate against Plaintiff, colluded internally to retaliate against Plaintiff, and ultimately drove Plaintiff to resign. Since there is direct evidence of retaliation, the Court does not need to conduct a *McDonnell Douglas* burden-shifting test.

Congress contemplated that the FLSA would rely on employee complaints for compliance and created a comprehensive private enforcement scheme to prevent retaliation against employees for engaging in protected activities: "For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. By the proscription of retaliatory acts set forth in § 15 (a)(3)… Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced[2]." *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Courts recognize the "remedial[3] purpose of the FLSA, which Congress intended to have the widest possible impact in the national economy." *Irizarry v. Catsimatidis,* 722 F.3d 99, 104 (2d Cir. 2013).

To that end, employers subject to the FLSA may not "discharge or in any other manner discriminate against any employee" who makes a complaint. 29 U.S.C. § 215. Employers "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3)… including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216. Courts around the country have granted injunctive relief[4] against employers who have been found to have retaliated against employees. New York law is more explicit and expansive in the relief[5] granted employees who have been subject to employer retaliation.

In the 2nd Circuit, a party seeking a preliminary junction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018). Here, a balance of the factors weighs in favor of Plaintiff, such that the evidence demonstrates Defendants

---

[1] 29 U.S.C. § 215 & N.Y. Lab. Law § 215

[2] "In this context, the significance of reimbursement of lost wages becomes apparent. To an employee considering an attempt to secure his just wage deserts under the [FLSA], the value of such an effort may pale when set against the prospect of discharge and the total loss of wages for the indeterminate period necessary to seek and obtain reinstatement. Resort to statutory remedies might thus often take on the character of a calculated risk, with restitution of partial deficiencies in wages due for past work perhaps obtainable only at the cost of irremediable entire loss of pay for an unpredictable period. Faced with such alternatives, employees understandably might decide that matters had best be left as they are. We cannot read the [FLSA] as presenting those it sought to protect with what is little more than a Hobson's choice." *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292-93 (1960)

[3] Additionally, the FLSA is "remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others… Such a statute must not be interpreted or applied in a narrow, grudging manner." *Arias v. Raimondo*, 860 F.3d 1185, 1192 (9th Cir. 2017) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).

[4] *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333 (11th Cir. 2002); *Perez Gutierrez v. Mariscos El Puerto, Inc*., 2019 WL 6050727 (D. Nev. Nov. 15, 2019).

[5] "The court shall have jurisdiction to restrain violations of this section… to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation; and, where the person or entity in violation is an employer, ordering rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages, costs and reasonable attorneys' fees." N.Y. Lab. Law § 215.

retaliated against Plaintiff, that Plaintiff is suffering irreparable harm[6] manifest as financial distress and an inability to practice his trade, that Plaintiff's hardship is outweighed by any miniscule or nonexistent harms suffered by Defendants, and that the public interest strongly weighs in favor of an injunction, to demonstrate that retaliation against employees will not be tolerated by the courts and that victims will not be financially harmed thereof. Finally, Mt. Sinai employees are incorrectly informed that they are not entitled to wages for work conducted after their scheduled shift and are denied compensation if they do try to claim their proper wages.

**Proposed Injunctive Relief**
Plaintiff requests that the Court enter an injunction:
- Ordering Defendants to reinstate Plaintiff to his previous position, though at a different hospital within the Mt. Sinai system;
- Forbidding Defendants from imposing any non-compete agreement on Plaintiff;
- Within 30 days, notifying all physicians and physician's assistants employed by Mt. Sinai that they may have been wrongfully denied compensation for work done after their scheduled shift;
- Prohibiting Defendants from recommending, undertaking, or facilitating any peer review proceedings against Plaintiff by any person who directly or indirectly reports to any of the named Defendants, or are the named Defendants;
- Prohibiting Defendants from any further violations of the FLSA and NYLL.

Plaintiff respectfully requests that the Court schedule a conference to discuss this matter prior to Plaintiff filing the appropriate motion papers. Plaintiff attempted to confer with counsel for the Defendants regarding this matter on November 14, 2023, and thereafter again on November 20 & 21; email correspondences were fruitless; furthermore, Defendants rebuffed Plaintiff's offer to engage in court-annexed mediation without preconditions.

Respectfully,
Alexander S. Weller, MD
*Pro se* Plaintiff
250 North 10th Street, Apt 428
Brooklyn NY 11211
267-566-2440 / Asweller4@gmail.com

---

[6] Plaintiff acknowledges 2nd Circuit precedent of *Oliver*, *Holt,* and its progeny, which found that a discharged employee does not demonstrate irreparable harm if the degree of "financial distress" does not extend to impending "bankruptcy or financial insolvency." However, to require an injured employee to be virtually destitute would contravene both Congressional intent and the broad remedial purposes of the FLSA/NYLL, chilling employees from making protected complaints. *Holt v. Continental Grp., Inc*., 708 F.2d 87 (2d Cir. 1983); *Oliver v. N.Y. State Police,* 812 F. App'x 61 (2d Cir. 2020). The Court should adopt a more liberal standard, such as that which is used in Section 10(j) injunction proceedings under the National Labor Relations Act, which requires similar "remedial" measures as the FLSA. See *King v. Amazon.com Servs. LLC*, No. 22-CV-01479 (DG) (SJB), 2022 U.S. Dist. LEXIS 210056 (E.D.N.Y. Nov. 18, 2022); *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131 (2d Cir. 2013); see also *Mullins v. City of N.Y.*, 626 F.3d 47, 55 (2d Cir. 2010) (retaliatory discharge may give rise to irreparable injury if it creates risk that other employees may be deterred from protecting their rights or from providing testimony for plaintiff in his or her effort to protect his or her own rights); *Chalk v. United States Dist. Court Cent. Dist.*, 840 F.2d 701 (9th Cir. 1988); *EEOC v. Chrysler Corp*., 733 F.2d 1183 (6th Cir. 1984); *Oshiver v. Court of Common Pleas*, 469 F. Supp. 645 (E.D. Pa. 1979); This does not rule out that Plaintiff is also suffering losses that are incalculable or immeasurable and thus constitute irreparable injury. See *Standard & Poor's Corp. v. Commodity Exch., Inc*., 683 F.2d 704, 711 (2d Cir. 1982); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp*., 269 F.3d 1149 (10th Cir. 2001); *Valley v. Rapides Par. Sch. Bd*., 118 F.3d 1047 (5th Cir. 1997).