UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────────────

ALEXANDER S. WELLER, MD,

          Plaintiff,

       -against-

ICAHN SCHOOL OF MEDICINE AT MOUNT
SINAI, KATHY NAVID, MD, DENNIS
CHARNEY, MD, CLARISSA JONES-WINTER,
MOUNT SINAI HEALTH SYSTEM, INC., THE
MOUNT SINAI HOSPITAL INC.,

         Defendants.

───────────────────────────────

Case No. 23-cv-04475 (PKC)(LB)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


AKERMAN LLP

Rory J. McEvoy, Esq.
Brittany A. Buccellato, Esq.
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
T: (212) 880-3800
rory.mcevoy@akerman.com
brittany.buccellato@akerman.com
Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

APPLICABLE LEGAL STANDARD………………………………………………………2

ARGUMENT………………………………………………………………………………...3

POINT I             THE COMPLAINT FAILS TO STATE A CLAIM
                    AGAINST CHARNEY……………………………………………………3

POINT II            THE COMPLAINT FAILS TO STATE A CLAIM FOR
                    AN UNREASONABLE NON-COMPETE AGREEMENT……………...4

POINT III           THE COMPLAINT FAILS TO STATE A CLAIM
                    UNDER SECTION 1 OF THE SHERMAN ACT………………………..5

                    A.  All Defendants Are Commonly Owned Affiliates Or
                        Agents Of The MSHS, Which Is Legally Incapable
                        Of Colluding With Itself……………………………………………6

                    B.  Any Antitrust Evaluation Of Plaintiff's Primary Vertical
                        Employment Agreement Would Be Under The Rule
                        Of Reason, Which Plaintiff Fails To Plead…………………………7

                    C.  Plaintiff Should Not Be Permitted To Amend The Complaint
                        To Plead A Rule Of Reason Violation Because It Would
                        Be Futile……………………………………………………………8

POINT IV            THE COMPLAINT FAILS TO STATE A CLAIM
                    UNDER SECTION 2 OF THE SHERMAN ACT………………………..9

POINT V             THE COMPLAINT FAILS TO STATE A CLAIM
                    FOR FAILURE TO PAY WAGES UNDER THE
                    FLSA AND THE NYLL…………………………………………………11

                    A.  The FLSA Does Not Provide A Cause Of Action For
                        Gap-Time Claims…………………………………………………11

                    B.  19.75 Hours Of The 20.75 Hours Of Work For Which
                        Plaintiff Seeks To Be Paid Is Not Compensable……………………12

                    C.  Plaintiff Was Paid For All Compensable Time He Worked…………13

POINT VI            THE COMPLAINT FAILS TO STATE A CLAIM
                    FOR RETALIATION UNDER THE FLSA AND
                    THE NYLL……………………………………………………………13

POINT VII        PLAINTIFF LACKS STANDING TO BRING A CLAIM
                 FOR INACCURATE WAGE STATEMENTS UNDER
                 THE NYLL……………………………………………………………15

CONCLUSION…………………………………………………………………………..16

## <u>TABLE OF CONTENTS</u>

**Page(s)**

**Cases**

*2238 Victory Corp. v. Fjallraven USA Retail, LLC,*
   No. 19-CV-11733, 2021 WL 76334 (S.D.N.Y. Jan. 8, 2021)……………………………...8

*AD/SAT, Div. of Skylight, Inc., v. Assoc. Press.,*
   181 F.3d 216 (2d Cir. 1999)………………………………………………………………10

*Anderson News LLC v. Am. Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012)…………………………………………………………….…...7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)………………………………………………………………………...3

*Baguidy v. Boro Transit Inc.,*
   283 F.Supp.3d 14 (E.D.N.Y. 2017)……………………………………………...13, 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)………………………………………………………………...2, 3

*Beyer Farms, Inc. v. Elmhurst Dairy, Inc.,*
   35 F.App'x 29 (2d Cir. 2002)…………………………………………………………8

*Blaine v. Meineke Discount Muffler Ships, Inc.,*
   670 F.Supp. 1107 (D. Conn. 1987)……………………………………………………9

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.,*
   485 U.S. 717 (1988)………………………………………………………………...7

*Chen v. Lilis 200 W. 57th Corp.,*
   No. 19-CV-7654, 2023 WL 2388728 (S.D.N.Y Mar. 7, 2023)…………………………15, 16

*Cohen v. Primerica Corp.,*
   709 F.Supp.63 (E.D.N.Y. 1989)……………………………………………….....passim

*Continental T.V., Inc. v. GTE Sylvania Inc.,*
   433 U.S. 36 (1977)…………………………………………………………………8

*Copperweld Corp. v. Independence Tube Corp.,*
   467 U.S. 752 (1984)………………………………………………………...5, 6

*Dove v. Fordham Univ.,,*
   56 F.Supp.2d 330 (S.D.N.Y. 1999)……………………………………………...3, 4

*Farmer v. Patino,*
 No. 18-CV-1435, 2020 WL 5342592 (E.D.N.Y. Sept. 4, 2020)…………………………...13, 14

*Gibbs v. City of N.Y.,*
 87 F.Supp.3d 482 (S.D.N.Y. 2015)……………………………………………………………12

*Gucci v. Gucci Shops, Inc.,*
 651 F.Supp. 194 (S.D.N.Y. 1986)…………………………………………..……………….....7

*Gutierrez v. Vergari,*
 499 F.Supp. 1040 (S.D.N.Y. 1980)……………………………………………………………...4

*Holzapfel v. Town of Newburgh,*
 145 F.3d 516 (2d Cir. 1998)……………………………………………………………………12

*Jackson v. ProAmpac LLC,*
 No. 7:22-CV-03120, 2023 WL 6215324 (S.D.N.Y. Sept. 25, 2023)…………………………3

*Jaeger v. N. Babylon Union Free Sch. Dist.,*
 191 F.Supp.3d 215 (E.D.N.Y. 2016)…………………………………………………………...14

*John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.,*
 22 F.3d 458 (2d Cir. 1994)………………………………………………………………………8

*Johnson v. Allick,*
 No. 18-CV-7171, 2019 WL 569106 (E.D.N.Y. Feb. 12, 2019)………………………………4

*Johnson v. Medisys Health Network,*
 No. 10-CV-1596, 2011 WL 5222917 (E.D.N.Y. June 1, 2012)
 *adopted as modified,* 2011 WL 4101323 (E.D.N.Y Sept. 8, 2011)...………………………….4

*Liu v. Little Saigon Cuisine Inc.,*
 No. 18-CV-2181, 2021 WL 4487839 (E.D.N.Y. Sept. 30, 2021)…………………………...12

*Lundy v. Catholic Health Sys. of Long Island, Inc.,*
 711 F.3d 106 (2d Cir. 2013)……………………………………….…………………..……...11

*Makarova v. United States,*
 201 F.3d 110 (2d Cir. 2000)…………………………………………………………………...3

*Melgar v. Pie Chatach 1776 LLC,*
 No. 23-CV-917, 2023 WL 2868299 (E.D.N.Y. Aug. 10, 2023)……………………………..16

*Ohio v. Am. Express Co.,*
 138 S. Ct. 2274 (2018)……………………………………………………………………...7, 8

*Perkins v. Bronx Lebanon Hosp. Ctr.,*
    715 F.App'x 103 (2d Cir. 2018)…………………………………………………………...12

*Robinson v. De Niro,*
    No. 19-CV-09156 (LJL), 2023 WL 4862772 (S.D.N.Y. May 25, 2023)……………………14

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)……………………………………………………………...3

*Sampson v. Medisys Health Network Inc.,*
    No. 10-CV-1342, 2011 WL 579155 (E.D.N.Y. Feb. 8, 2011)………………………………11

*Sealy v. State Univ. of N.Y. at Stony Brook,*
    834 F. App'x 611 (2d Cir. 2020)……………………………………………………………..14

*Shi v. TL & CG, Inc.,*
    No. 19-CV-08502, 2022 WL 2669156 (S.D.N.Y. July 11, 2022)…………………………...16

*Silverman v. City of N.Y.,*
    No. 98-CV-6277, 2001 WL 1776157 (E.D.N.Y. Nov. 19, 2001)……………………………..8

*Spectrum Sports v. McQuillan,*
    506 U.S. 447 (1993)……………………………………………………………………...9

*Tops Mkts., Inc. v. Quality Mkts., Inc.,*
    142 F.3d 90 (2d Cir. 1998)…………………………………………………………5, 9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021)…………………………………………………………………15

*Twin Labs. v. Weider Health & Fitness,*
    900 F.2d 566 (2d Cir. 1990)……………………………………………………………...9

*United Air Lines, Inc. v. Austin Travel Corp.,*
    867 F.2d 737 (2d Cir. 1989)……………………………………………………………10

*U.S. v. Aluminum Co. of Am.,*
    148 F.2d 416 (2d Cir. 1945)……………………………………………………………10

*U.S. v. Grinnell Corp.,*
    384 U.S. 563 (1966)……………………………………………………………………...9

*Velasquez v. Yoh Servs., LLC*
    803 F. App'x 515 (2d Cir. 2020)……………………………………………………………...13

*Wang v. XXB, Inc.*,
  No. 19-CV-7341, 2022 WL 912592 (E.D.N.Y. Mar. 29, 2022)……………………………..15

**Rules**

Federal Rule of Civil Procedure 12(b)(1)…………………………………………………...passim

Federal Rule of Civil Procedure 12(b)(6)…………………………………………………...passim

## PRELIMINARY STATEMENT[1]

Plaintiff Alexander S. Weller, M.D. ("Plaintiff" or "Weller"), a former part-time, per diem hospitalist physician at Mount Sinai Queens ("Mount Sinai"), voluntarily resigned from his position in December 2022, after only two months of employment.  Am. Compl. ¶21.  Weller brings this action against Mount Sinai (named herein as "the Icahn School of Medicine at Mount Sinai," "The Mount Sinai Hospital, Inc.", and "the Mount Sinai Health System, Inc."),[2] Kathy Navid, M.D., Dennis S. Charney, M.D. ("Charney"), and Clarissa Jones-Winter (collectively, "Defendants") alleging claims for: (i) an unreasonable non-compete agreement in violation of New York common law; (ii) agreements to restrain trade and monopolization in violation of Sections 1 and 2 of the Sherman Act; (iii) unpaid wages in violation of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"); (iv) retaliation in violation of the FLSA and the NYLL and (v) failure to provide accurate wage statements in violation of the NYLL.  Plaintiff's Amended Complaint (the "Complaint") should be dismissed: (i) with prejudice as to the non-compete, Sherman Act, unpaid wages, and retaliation claims because the Complaint fails to state a claim upon which relief can be granted regarding these claims and (ii) without prejudice as to the wage statement claim because Plaintiff lacks standing to bring this claim.

As a preliminary matter, the Complaint does not state a claim against Charney because it contains no allegations of wrongdoing by him.  The Complaint also fails to state a non-compete claim because there was no non-compete agreement.  Rather, the allegations of the Complaint establish that Weller's employment agreement simply provided that he was only required to

---

[1] The facts alleged in the Complaint are accepted as true solely for the purposes of this motion.

[2] Mount Sinai, the Icahn School of Medicine at Mount Sinai, and The Mount Sinai Hospital are all part of the Mount Sinai Health System, Inc. (the "MSHS").

notify the Chair of his Department at Mount Sinai if he accepted other employment.  The Complaint also does not state a claim under Section 1 of the Sherman Act because: (i) this claim is based on the non-existent non-compete agreement; (ii) it is undisputed that all defendants named in the Complaint are commonly owned affiliates or agents of the MSHS, which cannot collude with itself; and (iii) any antitrust evaluation of his primarily vertical employment contract would be under the rule of reason, and Plaintiff does not plead any rule of reason violation.  Plaintiff should not be permitted to amend his Complaint a second time to plead a rule of reason violation because any such repleading would be futile here.  The Complaint fails to state a claim under Section 2 of the Sherman Act because Plaintiff concedes that the MSHS has only 10% of the alleged market at issue, which the Second Circuit has held is insufficient to sustain a claim under Section 2.

The Complaint also fails to state a claim for unpaid wages under the FLSA and the NYLL because: (i) there is no cause of action under the FLSA for gap-time claims; (ii) time spent in connection with Plaintiff's complaints is not compensable time under the FLSA and/or the NYLL; and (iii) Plaintiff was paid for all compensable time he worked.  The Complaint does not state a claim for retaliation under the FLSA and the NYLL because no adverse actions were taken against Weller.  Finally, Weller's NYLL wage statement claim should be dismissed because the Complaint does not allege an actual and concrete injury in fact sufficient to confer standing.  Accordingly, the Complaint should be dismissed in its entirety.

## **APPLICABLE LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp*, 550 U.S. at 556, 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  The complaint must provide more than "labels and conclusions", or "a formulaic recitation of the cause of action." *Bell Atlantic Corp.,* 550 U.S. at 545.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir. 2000).  A claim should be dismissed pursuant to Rule 12(b)(1) when a plaintiff cannot establish standing for that claim.  *See, e.g., Jackson v. ProAmpac LLC,* No. 7:22-CV-03120, 2023 WL 6215324, at *3-4 (S.D.N.Y. Sept. 25, 2023).

While a court must generally ignore materials that are outside the pleadings, a court may consider materials "incorporated in [the complaint] by reference" or "upon which [the complaint] *solely* relies and ... is *integral to the complaint." Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) (internal citations omitted) (emphasis in original).

## ARGUMENT
### POINT I
### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CHARNEY

It is well-established that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v.*

*Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999).  *See also Johnson v. Allick,* No. 18-CV-7171, 2019 WL 569106, at *4, n.5 (E.D.N.Y. Feb. 12, 2019) (dismissing the complaint against one of the defendants because the plaintiff only alleged that this defendant entered into an unidentified contract); *Johnson v. Medisys Health Network,* No. 10-CV-1596, 2011 WL 5222917, at *21 (E.D.N.Y June 1, 2012) (dismissing the complaint against individual defendants where the only allegations against them were that they were trustees), *adopted as modified,* 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011); *Gutierrez v. Vergari,* 499 F.Supp. 1040, 1052 (S.D.N.Y. 1980) ("In view of the absence of any allegations in the amended complaint indicating the possibly of a [Section] 1983 claim against Greenspan, this motion [to dismiss] should be granted.").  The Complaint contains only one factual allegation regarding Charney.  Specifically, Plaintiff alleges that Charney (as Dean of the Icahn School of Medicine at Mount Sinai) signed his employment agreement.  Am. Compl. ¶¶13, 26.  This allegation does not allege any wrongdoing on the part of Charney and thus, is insufficient to state a claim against him.

**POINT II**

**THE COMPLAINT FAILS TO STATE A CLAIM FOR
AN UNREASONABLE NON-COMPETE AGREEMENT**

The Complaint fails to state a non-compete claim because there was no non-compete agreement in effect.  Rather, the employment agreement merely provided that Weller would "notify the Chairman of [his] department if [his] employment arrangements outside Mount Sinai change from [his] existing arrangement."  Am. Compl. ¶23.  Weller alleges that the Standard Terms and Conditions of Part Time Physician Employment (which is incorporated by reference in the Complaint) states that a physician could not accept another position or maintain a clinical practice outside of Mount Sinai without prior written approval.  Am. Compl. ¶24.  However, the following paragraph in this document (which Plaintiff conveniently omits) provides, "[i]f any

4

provision of the Physician's Employment agreement conflicts with any provision of the foregoing policies, the provision of the Employment Agreement shall control."  McEvoy Decl. ¶3, Ex. 2.  Thus, pursuant to the terms of the employment agreement which controlled, Weller was free to seek additional employment outside of Mount Sinai and only had to notify Mount Sinai if he did so and, thus, was not subject to a non-compete agreement.  Accordingly, the Complaint cannot state a claim for an unreasonable non-compete agreement because there was no non-compete agreement, only a notice provision.[3]

### POINT III

### THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

To prevail on a claim under Section 1 of the Sherman Act, a plaintiff must show: (i) "a combination or some form of concerted action between at least two legally distinct economic entities" and (ii) "such combination or conduct constituted an unreasonable restraint of trade either *per se* or under the rule of reason." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95–96 (2d Cir. 1998).  A parent corporation and its wholly-owned subsidiary or its agents do not provide the plurality of actors required for a Section 1 claim.  *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769-771 (1984).

Plaintiff's Section 1 claim is based on the alleged non-compete agreements between Mount Sinai and part-time, per diem physicians like Weller.  Am. Compl. ¶¶156, n.23, 170.  As discussed in Point II above, there was no non-compete agreement, only a provision providing for notice if Weller sought additional employment outside of Mount Sinai.  Accordingly, there is no

---

[3] At the October 31, 2023 pre-motion conference, the Court stated, "I'm just giving you my assessment of whether your noncompete claim, which is a freestanding claim and also relating to your Sherman Act claim will survive.  I really don't think it will…"  Pre-Motion Conf. Tr. 48 (Oct. 31, 2023).

basis for Weller's Section 1 claim.[4]  Even if the Court were to ignore the actual provisions of the

employment agreement, Plaintiff's Section 1 claim would still fail for the reasons discussed

below.

**A.    All Defendants Are Commonly Owned Affiliates Or Agents Of The MSHS, Which Is Legally Incapable Of Colluding With Itself**

The Complaint fails to allege a concerted action between at least two legally distinct

economic entities.  Rather, Weller's Section 1 claim is based on alleged actions by "Corporate

Defendants", which are the Icahn School of Medicine at Mount Sinai, the MSHS, and The

Mount Sinai Hospital.  Am. Compl. ¶¶n.2, 156.  Weller concedes in the Complaint that

"Corporate Defendants" operate as one integrated health system and economic actor.  For

example, he pleads that the MSHS "is the ultimate parent of an integrated health care system

encompassing the Icahn School of Medicine at Mount Sinai and nine hospital campuses [which

includes Mount Sinai]."  Am. Compl. ¶11.  *See also* Am. Compl. ¶2 (alleging, "Mount Sinai is

one of the largest health systems in New York City"); Am. Compl. ¶170 (identifying "Corporate

Defendants" as "one particular buyer").  Accordingly, the Complaint only alleges actions

between entities within the MSHS.  As wholly-owned corporate affiliates, Corporate Defendants

cannot legally collude with each other or their respective employees named as defendants in this

action. *See, e.g., Copperweld Corp.,* 467 U.S. at 771 ("the coordinated activity of a parent and its

wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the

Sherman Act"); *Cohen v. Primerica Corp.,* 709 F.Supp. 63, 65 (E.D.N.Y. 1989) ("Since

---

[4] The Court agreed that Plaintiff's Sherman Act claim based on his non-compete has no basis.  *See* Pre-Motion Conf. Tr. 39-40 (Oct. 31, 2023) (Judge Chen stated, "if your Sherman Act claim is based on this [cont'd on next page] noncompete issue, you're going to have a tough time with the noncompete clause or provision argument because it doesn't sound like you were prevented from competing.  It doesn't even sound like the standard policy, even if that could be said to apply to you given that you did negotiate outside employment, bars working somewhere else.  It only seems to require notice.").  *See also supra,* p. 5, n.3.

defendants Associated Madison, AC Insurance, and National Benefit are wholly owned

subsidiaries of defendant Primerica, plaintiff's claim fails to establish a cause of action under § 1

of the Sherman Act."); *Gucci v. Gucci Shops, Inc.*, 651 F. Supp. 194, 197 (S.D.N.Y. 1986)

(conspiracy was not legally possible where two companies at issue were commonly owned by

the same parent company and shareholders).[5]  As a result, the Complaint fails to state a claim

under Section 1 of the Sherman Act.

### B. Any Antitrust Evaluation Of Plaintiff's Primarily Vertical Employment Agreement Would Be Under The Rule Of Reason, Which Plaintiff Fails To Plead

Even if the Court were to consider Weller's employment agreement as the operative

agreement for his Section 1 claim, his per se claim should still be dismissed because, as with

any employer-employee contractor, this relationship was vertical.  *See Bus. Elecs. Corp. v.*

*Sharp Elecs. Corp.,* 485 U.S. 717, 730 (1988) ("Restraints imposed by agreement between

competitors have traditionally been denominated as horizontal restraints, and those imposed by

agreement between firms at different levels of distribution as vertical restraints."); *Anderson*

*News LLC v. Am. Media, Inc.,* 680 F.3d 162, 182 (2d Cir. 2012) (vertical restraints are

combinations of persons at different levels of the market structure).  The only horizontal

component is Weller's allegation that he could have competed by going into his own practice to

provide internal medicine services (which he did not do).  Am. Compl. ¶¶110-11.  Whether the

alleged restraint was vertical or a hybrid of vertical and horizontal, the applicable law requires

that the rule of reason be applied.  *See Ohio v. Am. Express Co*., 138 S. Ct. 2274, 2284 (2018)

---

[5] *See also* Pre-Motion Conf. Tr. 23-26 (Oct. 31, 2023) (Judge Chen stated, "Section 1 is a conspiracy and you have to allege entities are separate persons for a Section 1 analysis…And the purpose of the Sherman Act obviously is to prevent potential competitors from conspiring in some way I think to effect the market or somehow unfairly exercise some market advantage.  I mean, I think, I think that's sort of the purpose and that's why you have to allege two separate entities and not related entities or parents and subs…the potential flaw I guess or defect in your argument is going to be that you haven't identified two separate entities that conspired together to violate the Sherman Act.").

(vertical restraints are subject to the rule of reason); *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54-59 (1977) (same); *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 35 F. App'x 29, 29 (2d Cir. 2002) (hybrid relationships with both vertical and horizontal components are subject to the rule of reason); *2238 Victory Corp. v. Fjallraven USA Retail, LLC*, No. 19-CV-11733, 2021 WL 76334, at *5 (S.D.N.Y. Jan. 8, 2021) (same).  Plaintiff does not plead a rule of reason Section 1 claim and his claim should be dismissed as well.  *See* Am. Compl. Count 5.

**C.      Plaintiff Should Not Be Permitted To Amend The Complaint**
**To Plead A Rule Of Reason Violation Because It Would Be Futile**

Should Plaintiff seek leave to amend the complaint yet again to plead a rule of reason violation, the Court should deny that request because it would be futile.  *See, e.g., John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir. 1994) (motion for leave to amend properly denied where the proposed amendment is futile).  *See also Silverman v. City of N.Y.,* No. 98-CV-6277, 2001 WL 1776157, at *2 (E.D.N.Y. Nov. 19, 2001). ("If the proposed claims would be subject to dismissal under Rule 12(b)(6), a court should refuse to grant leave to amend.").

Weller could not plead the rule of reason because even assuming there was a non-compete provision in the employment agreement (which there is not), his allegation is only that the non-compete prevented him from taking competing jobs while employed at Mount Sinai. Am. Compl. ¶¶23-24.  He cannot allege that the purported non-compete threatened his (and other part-time, per diem physicians') ability to resign and take a competing job for better pay. In fact, he alleges that he did take a job with a competitor earning 20% more per hour following his resignation.  Am. Compl. ¶115.  Thus, the policy arguments he makes regarding post-employment non-compete provisions do not apply here and the factual allegations do not allege that there was an actual adverse effect on competition as a whole, as required under the rule of

8

reason.[6]  *See Tops Mkts., Inc.,* 142 F.3d at 96 (to state a claim for a rule of reason violation, a

plaintiff must allege that "the challenged action has had an *actual* adverse effect on competition

as a whole in the relevant market").  *See also Blaine v. Meineke Discount Muffler Shops, Inc.,*

670 F Supp 1107, 1113-1114 (D. Conn. 1987) (dismissing plaintiffs' Section 1 rule of reason

violation where they failed to allege sufficient injury to the market).

**POINT IV**

**THE COMPLAINT FAILS TO STATE A CLAIM
UNDER SECTION 2 OF THE SHERMAN ACT**

To prevail on a monopoly claim under Section 2 of the Sherman Act, a plaintiff must

show: (i) the possession of monopoly power in the relevant market and (ii) the willful acquisition

or maintenance of that power as distinguished from growth or development as a consequence of

a superior product, business acumen, or historic accident.  *U.S. v. Grinnell Corp.,* 384 U.S. 563,

570-71 (1966).  An attempt to monopolize claim under Section 2 requires proof that the

defendant engaged in predatory or anticompetitive conduct with a specific intent to monopolize

and a dangerous probability of achieving monopoly power.  *Spectrum Sports v. McQuillan,* 506

U.S. 447, 456 (1993).  "A threshold showing for a successful attempted monopolization claim is

sufficient market share by the defendant."  *Twin Labs. v. Weider Health & Fitness,* 900 F.2d 566,

570 (2d Cir. 1990).

In the Complaint, Weller admits that the MSHS does not have sufficient market share for

a monopolization or an attempted monopolization claim.  He alleges that the MSHS has only

---

[6] Even post-employment non-compete agreements are not per se unlawful or even unreasonable under the circumstances alleged in the Complaint.  The Complaint alleges that the Federal Trade Commission ("FTC") proposed a rule that would make it an unfair method of competition for an employer to enter into or attempt to enter into a non-compete clause with a worker.  Am. Compl. ¶102, n.7.   As a proposed rule, it is not in effect now nor was it in effect when Plaintiff signed the employment agreement.  Moreover, logic dictates that the FTC would not propose a rule to make something unlawful that is already unlawful.  Thus, the Complaint concedes that non-compete agreements are not unreasonable in and of themselves.

9

"over 10% of the market share in the New York City Region."  Am. Compl. ¶113.[7]   The law in the Second Circuit is clear that a 10% market share does not come close to sustaining a monopolization or attempted monopolization claim under Section 2.  *See, e.g., AD/SAT, Div. of Skylight, Inc., v. Assoc. Press.,* 181 F.3d 216, 229 (2d Cir. 1999) ("[W]e have held that a 33 percent market share does not approach the level required for a showing of dangerous probability of monopoly power."); *United Air Lines, Inc. v. Austin Travel Corp.,* 867 F.2d 737, 742 (2d Cir. 1989) ("[E]ven adopting Austin's contention that United controls 31% of the national market, it lacks the market power necessary to constitute a national monopoly."); *U.S. v. Aluminum Co. of Am.,* 148 F.2d 416, 424 (2d Cir. 1945) ("[I]t is doubtful whether sixty or sixty-four percent [of the market] would be enough; and certainly thirty-three per cent is not."); *Cohen,* 709 F.Supp. 63, 66 (a 19% market share cannot sustain a monopolization or attempt to monopolize claim under Section 2 and plaintiff's Section 2 claims fail as a matter of law).

In addition, Weller alleges that he was able to find another job at a different "NYC-based health system" and his compensation "increased by over 20%."  Am. Compl. ¶115.  If the MSHS monopolized the market for physician services in the New York City area as he claims, Weller would not have been able to resign and find another job earning that much more money.  Moreover, by alleging that "Mount Sinai is one of the largest healthcare systems in New York City", Plaintiff concedes that there are other large healthcare systems in the market.  Am. Compl. ¶2.  Thus it is clear from the face of the Complaint that the MSHS does not have sufficient

---

[7] Although Weller alleges that the MSHS has a 39% market share in Manhattan adult medical/surgical inpatient volume, this is not the market pleaded in the Complaint.  Am. Compl. ¶113.  Rather, he alleges that: (i) the relevant markets are "employment market for physician services", "primary care medical services" and "hospitalist physician services" and (ii) "the relevant geographic market is New York City, and in the alternative Manhattan and Queens."  Am. Compl. ¶168.

market power and, as a result, the Complaint fails to state a cause of action for monopolization or attempted monopolization under Section 2 of the Sherman Act.[8]

## POINT V

### THE COMPLAINT FAILS TO STATE A CLAIM FOR FAILURE TO PAY WAGES UNDER THE FLSA AND THE NYLL

**A.**  **The FLSA Does Not Provide A Cause Of Action For Gap-Time Claims**

The FLSA does not provide a cause of action where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold (a so-called "gap-time claim").[9] *Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 116-17 (2d Cir. 2013).  *See also, e.g., Sampson v. Medisys Health Network Inc.,* No. 10-CV-1342, 2011 WL 579155, at *3, 5 (E.D.N.Y. Feb. 8, 2011) (same).  Nowhere in the Complaint does Plaintiff allege that his wages fell below the statutory minimum or that his hours rose above the overtime threshold.  In fact, he admits that, at least in connection with one of the instances for which he is seeking pay, he is not claiming that he worked over 40 hours in a week.  Am. Compl. ¶46.  Accordingly, Weller's FLSA claim for unpaid wages fails.  *See, e.g., Lundy,* 711 F.3d at 116-117 (affirming dismissal of plaintiffs' FLSA gap-time claim); *Sampson,* 2011 WL 579155, at *5 (granting motion to dismiss plaintiffs' FLSA gap-time claim).

---

[8] Plaintiff's conspiracy to monopolize claim fails because, for the reasons discussed in Point III above, entities within the commonly-owned MSHS are incapable of colluding with each other.  *See also* Pre-Motion Conf. Tr. 26 (Oct. 31, 2023) (Judge Chen stated, "I don't think you've alleged or can allege a conspiracy…").

[9] Weller tries to hide that he is attempting to assert a gap-time claim under the FLSA by labeling it as "impermissible rounding."  Am. Compl. Count 1.  However, he makes no allegations regarding rounding and it is clear his claim is a gap-time claim.  In fact, he titles his identical NYLL claim as "unpaid gap time."  Am. Compl. Count 2.

**B.      19.75 Hours Of The 20.75 Hours Of Work For**
**Which Plaintiff Seeks To Be Paid Is Not Compensable**

Plaintiff seeks compensation for: (i) the alleged three quarters of an hour he spent on a Zoom meeting with Daniel McCabe to discuss concerns Plaintiff had and (ii) another nineteen hours he allegedly spent "research and reviewing Mt. Sinai policy, federal and state law, drafting emails and other correspondence" in connection with his complaints regarding his pay.  Am. Compl. ¶98.

Compensable work under the FLSA and the NYLL is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 522 (2d Cir. 1998) (internal citations and quotations omitted).[10]  The alleged time that Weller spent airing his concerns and researching law in support of those concerns is not compensable because it is clear from the face of the Complaint that this "work" was his choice and pursued for his own benefit, not necessarily and primarily for the benefit of Mount Sinai.  Accordingly, this time is not compensable and the Complaint fails to state a claim of unpaid wages regarding the alleged 19.75 hours Weller spent in pursuit of his complaints.  *C.f. Gibbs v. City of N.Y.,* 87 F.Supp.3d 482, 493-97 (S.D.N.Y. 2015) (time spent predominately for the benefit of the employee was not compensable).[11]

---

[10] The NYLL "incorporates the FLSA's standards for determining whether time worked is compensable."  *Liu v. Little Saigon Cuisine Inc.,* No. 18-CV-2181, 2021 WL 4487839, at *11 (E.D.N.Y. Sept. 30, 2021).  *See also Perkins v. Bronx Lebanon Hosp. Ctr.,* 715 F. App'x 103, 104 (2d Cir. 2018) (for time to be compensable under the NYLL it must be "predominantly for the benefit of the employer").

[11] Even assuming arguendo that this time met the definition of compensable activity, it would constitute a non-compensable activity under the Portal-to-Portal Act because legal research and activities related to Plaintiff's complaints about his pay are clearly neither integral nor indispensable to Plaintiff's principal activities as a physician, which included admitting patients, coordinating medical care for patients, and discharging patients.  Am. Compl. ¶40.  *See Gibbs,* 87 F.Supp.3d at 497-498 (work that is not a principal activity or an activity integral or indispensable to principal activities of the employee are excluded from the definition of "work" under the Portal-to-Portal Act).

C.      **Plaintiff Was Paid For All Compensable Time He Worked**

Finally, Plaintiff claims that he was not paid for thirty minutes on November 4 and thirty minutes on November 6.  Am. Compl. ¶98.  As a preliminary matter, it is clear from the factual allegations in the Complaint that he is only alleging that he was not paid for thirty minutes on November 6.  Specifically, according to the Complaint, Plaintiff worked an extra thirty minutes for which he was not paid on November 6.  *Id.* ¶¶47, 53.  The Complaint alleges that he was told that he left thirty minutes early on November 4, but claimed to have worked the full day. *Id.* ¶62. Nowhere in the Complaint does Weller allege that he was not paid for those thirty minutes on November 4.  Rather, he alleges that Mount Sinai told him that the thirty minutes for which he was paid on November 4 but left early covered the thirty minutes for which he claims he worked but was not paid on November 6.  *Id.* ¶60.  Nowhere in the Complaint or in the correspondence incorporated in the Complaint does Weller affirmatively state that he did not leave at 4:30 p.m. on November 4 (because he cannot without perjuring himself).  Instead, he dances around the issue in various ways.  *See* Am. Compl. ¶¶63, 65.  Thus, the thirty minutes for which Weller was paid on November 4 but did not work covers the extra thirty minutes he claims he worked but was not paid on November 6.   Accordingly, Weller was paid for all compensable time worked and his wage claims fail as a result.

### POINT VI

### THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE FLSA AND THE NYLL

To state a claim of retaliation under the FLSA, a plaintiff must allege: (i) participation in a protected activity known to the employer; (ii) an employment action disadvantaging the plaintiff; and (iii) a causal connection between the protected activity and the adverse employment action.  *Velasquez v. Yoh Servs., LLC,* 803 F. App'x 515, 517 (2d Cir. 2020);

*Farmer v. Patino,* No. 18-CV-1435, 2020 WL 5342592, at \*5 (E.D.N.Y. Sept. 4, 2020); *Baguidy v. Boro Transit Inc.,* 283 F.Supp.3d 14, 30 (E.D.N.Y. 2017).

Plaintiff alleges that, in retaliation for his complaints, Defendants: (i) accused him of violating policies and (ii) imposed new hourly record requirements not required of others.  Am. Compl. ¶148.  Even accepting these allegations as true (which they are not), these actions fail to constitute adverse actions and, as a result, the Complaint fails to state a retaliation claim.  *See Sealy v. State Univ. of N.Y. at Stony Brook,* 834 F. App'x 611, 614-15 (2d Cir. 2020) (another employee being assigned to watch over the plaintiff was not adverse action); *Jaeger v. N. Babylon Union Free Sch. Dist.,* 191 F.Supp.3d 215, 235 (E.D.N.Y. 2016) (monitoring of attendance, even if different from the scrutiny given to colleagues, and an alleged false accusation without discernible consequence could not support a claim of retaliation).[12]  Plaintiff also claims that Defendants colluded and intended to terminate him (even though he voluntarily resigned).  Am. Compl. ¶¶78, 148.  This allegation cannot constitute an adverse action because even as alleged in the Complaint, no action was taken against him.  Finally, Weller alleges that Defendants docked his pay in retaliation for his complaints.  Am. Compl. ¶148.  However, the Complaint contains no factual allegations to that effect.  Rather, he alleges that he was merely told that because he left thirty minutes early on November 4, the payment for that day would cover the extra thirty minutes he said he worked on November 6.  Am. Compl. ¶60.  He does not allege that thirty minutes was taken from his wages for that day.  Thus, it is clear from the face of the Complaint that no pay was ever actually docked.  Accordingly, the Complaint fails to state a retaliation claim because it does not allege any employment actions which disadvantaged him.

---

[12] *See also Robinson v. De Niro,* No. 19-CV-09156 (LJL), 2023 WL 4862772, at \*37 n.25 (S.D.N.Y. May 25, 2023) ("To the extent an action is not an adverse employment action for purposes of Title VII or Section 1983 retaliation claims, it would also not constitute an adverse action for FLSA/NYLL retaliation claim.")

14

**POINT VII**

**PLAINTIFF LACKS STANDING TO BRING A CLAIM
FOR INACCURATE WAGE STATEMENTS UNDER THE NYLL**

Only plaintiffs who have been "concretely harmed by a defendant's statutory violation" have standing to sue in federal court. *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2205 (2021).  Following the Supreme Court's decision in *TransUnion,* courts in the Second Circuit have held that plaintiffs lack standing to bring claims alleging violations of the NYLL's recordkeeping requirements absent any concrete, consequences of the violation.  *See, e.g., Chen v. Lilis 200 W. 57th Corp.,* No. 19-CV-7654, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023) (listing cases); *Wang v. XBB, Inc.,* No. 19-CV-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (Chen, D.J.) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim").

Here, Weller argues that Mount Sinai violated the NYLL's recordkeeping requirements because his wage statements did not include the number of hours he worked.  Am. Compl. ¶137. He claims that, as a result of this alleged failure, it was difficult for him to figure out for what time he was paid and to make complaints to Defendants regarding the alleged underpayment of his wages.  Am. Compl. ¶138.  As a preliminary matter, the wage statements contained both Plaintiff's rate of pay ($150.00 an hour) and the total pay.  Am. Compl. Ex. A.  As a result, Plaintiff could not have suffered any tangible injury because all he needed to do was divide the total gross pay by his rate of pay to find out how many hours for which he was paid.  Moreover, it is clear that this alleged failure did not prevent Plaintiff from deciding that he was underpaid and promptly raising issues regarding his pay.  *See* Am. Compl. ¶¶43, 46, 48, 54.  Accordingly, Plaintiff did not suffer any injury from the alleged recordkeeping violation.

Plaintiff also claims that Mount Sinai's alleged failure to provide him with accurate wage statements resulted in the underpayment of wages.  Am. Compl. ¶138.  Courts in this Circuit have rejected the argument that underpayment of wages provides the required injury for standing because that injury was already encompassed by other claims in the lawsuits.  *See, e.g., Melgar v. Pie Chatach 1776 LLC,* No. 23-CV-917, 2023 WL 2868299, at *2 (E.D.N.Y. Aug. 10, 2023) (dismissing NYLL recordkeeping claims for lack of standing where the concrete injury arose from the alleged failure to pay overtime, not from the recordkeeping violation); *Chen,* 2023 WL 2388728, at *8-9 (dismissing NYLL recordkeeping requirement violation claims for lack of standing where alleged injury was already encompassed by other claims in the lawsuit); *Shi v. TL & CG, Inc.,* No. 19-CV-08502, 2022 WL 2669156, at *9 (S.D.N.Y. July 11, 2022) (plaintiff's argument that employer's failure to provide proper wage statements facilitated the underpayment of wages failed to allege an injury in fact sufficient to confer standing).  Weller's alleged injury of being underpaid is already encompassed by his NYLL and FLSA failure to pay wages claims.  Accordingly, Plaintiff's failure to provide accurate wage statement claim should be dismissed for lack of standing.

## **CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss the Complaint: (i) as to Counts 1, 2, 4, 5, 6, and 7 with prejudice pursuant to Fed. R. Civ. P. 12(6)(b) and: (ii) as to Count 3, without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) should be granted.

Date:   New York, New York
        December 14, 2023

**AKERMAN LLP**

        /s/ Rory J. McEvoy
        Rory J. McEvoy
        Brittany Buccellato

16