UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

ALEXANDER WELLER, MD

                Plaintiff,

          -against-

ICAHN SCHOOL OF MEDICINE AT
MOUNT SINAI, KATHY NAVID, MD,
DENNIS CHARNEY, MD, CLARISSA
JONES-WINTER, MOUNT SINAI HEALTH
SYSTEM INC., and THE MOUNT SINAI
HOSPITAL INC.,

                Defendants.

-------------------------------------------------------- X

**MEMORANDUM & ORDER**
23-CV-4775 (PKC)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

      Plaintiff Alexander Weller, proceeding *pro* se,[1] brings claims against the Defendants for

unpaid gap time under the New York Labor Law ("NYLL") and for retaliation under the Fair

Labor Standards Act ("FLSA") and NYLL. *See generally* Amended Complaint, Dkt. No. 57;

Memorandum & Order, Dkt. No. 39, ("MTD Order").

      Presently before the Court is Plaintiff's latest motion for sanctions, this one relating to the

---

[1] Although Plaintiff is proceeding *pro se*, he is an attorney admitted to practice in the State of New York and the United States District Court for the Southern District of New York. *See* Dkt. No. 101-3 at 6. His prior legal experience includes a four-month internship with a United States District Judge where he "[r]esearched issues and wrote bench memos" and "[w]orked on matters related to . . . federal civil procedure." *Id.* at 5. He has shown throughout this litigation an extremely capable and sophisticated understanding of Federal civil practice. As an admitted attorney with training and experience related to federal civil procedure, Plaintiff is not entitled to the typical deference afforded a *pro se* party. *See Tracy v. Freshwater*, 623 F.3d 90, 101–03 (2d Cir. 2010); (discussing varying levels of solicitude afforded to types of *pro se* litigants; *see also Powell v. Bank of New York Mellon*, 25-CV-2178, 2025 WL 2696509, at *1 (E.D.N.Y. Sept. 22, 2025) ("the level of leniency provided to a non-lawyer pro se litigant in the review and filings and submissions does not apply to that of an attorney proceeding *pro* se") (citing *Tracy*, 623 F.3d at 102). Additionally, as an admitted attorney, the Court expects Plaintiff to uphold the legal and ethical standards required of any attorney practicing in this District.

timing of Defendants' production of certain text messages and their purported failure to properly prepare witnesses for the deposition of Defendant Icahn School of Medicine at Mount Sinai. Memorandum of Law in Support of Plaintiff's Motion for Relief, Dkt. No. 105-1 ("Pl.'s Mot."). For the reasons set forth below, Plaintiff's motion for sanctions is denied. However, the Court will permit some brief additional discovery related to the text messages, even though the period to conduct discovery in this case has closed. The Court declines to re-open discovery for issues related to the Rule 30(b)(6) depositions.

## LEGAL STANDARD

### I.    Scope of Discovery Under Rule 26

Plaintiff's motion for discovery sanctions must be examined within the context of the scope of discovery in this matter. *See, e.g.*, *United States v. Veeraswamy*, 23-CV-9379, 2025 WL 2740374, *9 (E.D.N.Y. Sept. 26, 2025) (describing proportionality standard). While a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," such discovery is limited to information "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While the scope of discovery is broader than relevance to the claims and defenses, "the more relevant the information sought is, the less likely a court would find the subject discovery disproportionate." *Veeraswamy*, 2025 WL 2740374, at *9 (quoting *White v. Cnty. of Suffolk*, 20-CV-1501, 2022 WL 1154839, at *2 (E.D.N.Y. Apr. 19, 2022)).

This matter involves a claim of an hour of unpaid gap time under the NYLL and claims for retaliation under the FLSA and NYLL. *See* MTD Order at 22. While the scope of the retaliation claim is disputed by the parties, the decision permitting it to move to discovery held only Plaintiff's allegations that "Defendants imposed new hourly reporting requirements on Plaintiff and withheld his pay" were sufficient to establish retaliation at that stage. *Id.* at 24. Plaintiff maintains the retaliation claim can include a wrongful termination element or a failure to rehire element. *See*, *e.g.*, Dkt. No. 96 at 2. Given the broad scope of discovery to this point, he has been afforded proportional discovery on those topics, although in some areas, such as the extent of searches for electronically stored information ("ESI"), the Court has limited discovery based on proportionality. *See generally* Order, Dkt. No. 92, ("30(b)(6) Order"); *see also Veeraswamy*, 2025 WL 2740374, *9 ("[W]hile the scope of discovery is 'broad,' it is not 'limitless.'") (quoting *Sanders v. SUNY Downstate Med. Ctr.*, 22-CV-4139, 2024 WL 4198355, at *2 (E.D.N.Y. Sept. 16, 2024) (citations omitted)).

## II.    Rule 37 Sanctions

Plaintiff seeks discovery sanctions pursuant to Rule 37, which permits sanctions for violations of certain obligations and orders related to discovery. *See* Pl.'s Mot. at 6. Although Plaintiff does not cite to a specific provision of Rule 37 in his motion, it appears four provisions may be applicable: (i) Rule 37(b)(2), which provides for sanctions for a party's failure to comply with a court order; (ii) Rule 37(c)(1), which provides for sanctions for failure to disclose or supplement discovery responses; (iii) Rule 37(d), which relates to a party's failure to appear at a deposition; and (iv) Rule 37(e), which relates to a failure to preserve Electronically Stored Information (ESI). *See* Fed. R. Civ. P. 37.

"[D]istrict courts possess wide discretion in imposing sanctions under Rule 37." *Reico v.*

*D'Almonte*, 22-CV-6153, 2025 WL 959351, at *2 (S.D.N.Y. Mar. 31, 2025) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007)).  In exercising that discretion, "courts in this Circuit often evaluate four factors: '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of [ ] noncompliance.'"  *Veeraswamy*, 2025 WL 2740374, at *12 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal citations omitted).

### III.    Rule 26 Sanctions

Plaintiff also invokes Rule 26(g)(3), which provides sanctions for improper certification of discovery responses.  Pl.'s Mot. at 7.  A certification is improper where an attorney fails to make an inquiry as to the extent of a client's search for information that is "reasonable under the circumstances."  *Markey v. Lapolla Indus., Inc.*, 12-CV-4622, 2015 WL 5027522, at *16 (E.D.N.Y. Aug. 15, 2015).  The rule is designed to "curb discovery abuses, including evasive responses."  *Id.* at *18 (quoting *Koibel v. Royal Dutch Petroleum Co.*, 02-CV-7618, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009); *see also Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 221–222 (S.D.N.Y 2003) (noting that the attorney's certification "signifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.") (quoting Advisory Committee Notes to 1983 Amendment to Rule 26).  If a party has improperly certified their responses, sanctions are mandatory—but the Court has discretion over the kind of sanction to impose.  *Id.* at *18.

4

## DISCUSSION

### I.    Application As to the Timing of Defendant's Text Message Production

Plaintiff seeks sanctions pursuant to Rules 26 and 37 relating to the timing of Defendants' production of text messages.  Specifically, Plaintiff posits that Defendants should have searched their cell phones for messages upon receiving Plaintiff's Rule 34 document requests in May 2025, or, at the very latest, in July 2025 when the Court first addressed the issue.  Pl.'s Mot. at 9–10. Instead, Defendants did not search for the text messages until September 2025, and they did not produce the text messages until October 2025, both times in response to court-ordered deadlines. *See id*.  Plaintiff argues that this amounts to "willful noncompliance and lack of candor with [Defendants'] discovery obligations and of Court orders."  *Id.* at 10.  Plaintiff argues that he was prejudiced by the timing of the production because he had already taken depositions of most defendants.  *Id.* at 9.

Plaintiff seeks the following sanctions:  (1) preclusion of any defense to a purported wrongful discharge claim and failure to rehire claim; (2) an instruction to a jury that it may consider the timing of the production of text messages and that the timing was intentional; (3) an order compelling the production of the ten messages prior to and following each text messages from these individuals' personal phones regardless of content; (4) an order compelling "each and every deponent" in this matter to appear for repeat depositions; (5) shift costs of further depositions to the Defendants; and (6) ordering an additional search of Defendant Navid's personal cell phone conducted by an "outside, independent ESI expert" at Defendants' expense.  *Id.* at 10–11.

As discussed below, Defendants did not engage in any evasive conduct, and the timing of the search and production of text messages is appropriate because they interposed, on notice to Plaintiff, well founded objections to the relevance, scope, and proportionality of the request.  After

5

the Court heard their objections and directed them to search and produce, they complied with the Court's orders. Thus, there is no basis for sanctions. Even if sanctions were warranted, the sanctions Plaintiff proposes are not appropriate.

### A. Relevant Background

On March 20, 2025, then-assigned Magistrate Judge Lois Bloom held a conference to discuss discovery. Order dated 03/20/2025; *see also* March 20, 2025 Hearing Transcript, Dkt. No 55. During this conference, Plaintiff asked Judge Bloom about the "scope of ESI." Dkt. No. 55 at 14. Judge Bloom made clear that she viewed extensive ESI searches as disproportionate to the needs this case. *See id.* at 14 ("[A]gain, proportionality . . . we're not doing a full on electronic search for terms, that will not happen in this case . . . There's no reason for it"). Judge Bloom then directed Plaintiff to focus on discovery from the named individual defendants only. *See id.* at 14–16.

On April 1, 2025, Plaintiff served on Defendants a series of 23 document requests pursuant to Rule 34. Dkt. No. 105-7. Although no individual request directly seeks text messages from the personal cell phone of named defendants, some seek communications that could include such messages. *See id.* On May 29, 2025, Defendants submitted responses and objections to Plaintiff's document requests. Dkt. No. 105-8. Although Defendants improperly asserted "general objections" in overall response to the requests, they also interposed specific objections to each request that complied with Rule 34, including to their burden, scope and relevance.[2] *See generally*

---

[2] The Federal Rules of Civil Procedure were amended in 2015 to, among other things, change practices surrounding objections to document requests. *See Fischer v. Forrest*, 14-CV-1304, 2017 WL 773694, at *1–2 (S.D.N.Y. Feb. 28, 2017). The amended Rule 34 makes clear parties cannot interpose general objections to document requests and instead requires specific objections to each document request. Fed. R. Civ. P. 34(b)(2)(B) (a party must "state with specificity the grounds for objecting to the request"). The Rule, as amended, also requires that the

*id.* Defendants also produced hundreds of documents, including e-mail correspondence between various individuals who were the subject of Plaintiff's requests. *See id.*

On June 8, 2025, after receiving Defendants' responses and objections, Plaintiff served Defendants with a letter outlining what he viewed as deficiencies in Defendants' responses. Dkt. No. 105-9. Among other things, Plaintiff said that he "expect[s]" that Defendants will produce messages obtained "by searching [D]efendant[s'] cell phones." *Id.* at 1–2. On June 13, 2025, Defendants responded via letter. Dkt. No. 105-10. As to the demand for a search of Defendants' cell phones, Defendants stated that Plaintiff was "not entitled to the ESI discovery that [he] request[s]," citing to Judge Bloom's March 20, 2025 comments about the scope of discovery and ESI. *Id.* at 2 (citing Dkt. No. 55 at 14–16).

On July 22, 2025, the parties filed a joint status letter to United States Magistrate Judge Joseph A. Marutollo, the then-assigned magistrate judge. Dkt. No. 69. In that letter, Plaintiff wrote that he "requested that Defendants ensure that an appropriate search for responsive records on Defendants' cell phones was conducted." *Id.* at 2. Defendants responded that "there has been or will be a search conducted on the individual defendants' cell phones and on any messaging apps they have." *Id.* at 3.

On July 23, 2025, Judge Marutollo ordered that Defendants search the phones and "produce

---

parties disclose whether documents are being withheld based on each objection. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection"). Many attorneys are slow to incorporate these critical changes into their discovery practices. *See Fischer*, 2017 WL 773694, at *1 ("[T]he Court still sees too many non-compliant Rule 34 responses"). In the instant discovery dispute, the specific objections combined with subsequent conferrals between the parties clarified Defendants' objections, and that Defendants would withhold information based on them. Absent these specific objections and subsequent clarifications, Defendants' reliance on "general objections" could well form its own basis for sanctions under Rule 37 (a) or (c), especially if the Court is forced to address a form objection which a party was not actually relying on in withholding documents.

a sworn affidavit attesting to [a] search upon completion and production of any documents that the searches yield." Dkt. No. 113 at 13. Judge Marutollo limited the scope of the search to Defendants' cell phones. *Id.* Judge Marutollo did not provide a deadline for the search nor for the production of responsive text messages. Minute Entry Dated 7/23/2025.

On August 1, 2025, days after Judge Marutollo issued his discovery rulings, this matter was transferred to the undersigned. Minute Entry dated 08/01/2025. Within a week of the transfer, Plaintiff filed two discovery motions. *See* Dkt. Nos. 70; 72. In the second of these motions, Plaintiff asked that the Court compel, among other things, "[a] *Jackson* affidavit as to their search for responsive records on Defendants' cell phones and mobile messaging apps." [3] Dkt. No. 72 at 2. In subsequent letters to the Court, Plaintiff reiterated his demand for the affidavit regarding Defendants' cell phone searches. *See* Dkt. Nos. 74; 76.

On August 22, 2025, the Court held a status conference to address the parties' numerous outstanding discovery disputes, including the dispute relating to the search of Defendants' cell phones. Minute Entry dated 08/25/2025; Aug. 25, 2025 Hearing Transcript, Dkt. No. 81. During that conference, Defendants' counsel confirmed that the phones had been preserved but not yet searched. Dkt. No. 81 at 20–22. Defendants represented that Mount Sinai's information technology department, or an outside contractor, would conduct a search of the Defendants' cell phones. *Id.* at 22. The Court permitted the parties until September 10, 2025 to negotiate search terms, with the understanding that Defendant would conduct a search of the phones sometime

---

[3] Plaintiff was apparently referring to "an affidavit or declaration filed by a party that claims that the documents sought do not exist. The affidavit [derives] its name from a New York state case *Jackson v. City of New York* 586 N.Y.S.2d 952 (App. Div. 1st Dep't 1992)." *Tedaldi v. American Paving, Inc.*, 24-CV-5011, 2025 WL 2597205, at *3 (E.D.N.Y Aug. 11, 2025) (quoting an unreported docketed order from the same case). It is unclear why, at this point, Plaintiff apparently believed Defendants would say no documents exist, as Defendants had responded that they had not yet searched the phones.

thereafter.  Minute Entry dated 08/25/2025.  During that same conference, Plaintiff asked to schedule and take several depositions prior to September 10, 2025.  Dkt. No. 81 10:13–12:2. Plaintiff also moved for sanctions related to one Defendant's failure to appear at a deposition scheduled on August 20, 2025, which the Court denied.  Dkt. No. 79; Minute Entry dated 08/25/2025.

On September 11, 2025, Plaintiff wrote a letter to the Court which, in addition to other issues, maintained that "Defendants have yet to produce the affidavit related to search for responsive records on cell phones and messaging apps, which was ordered in July.  Nor have the defendants produced any text messages whatsoever."  Dkt. No. 83 at 2.  Plaintiff did not address the Court's deadline confer about search terms, which he apparently had not done.

On September 19, 2025, in response to Plaintiff's September 11, 2025 letter, the Court ordered Defendants to produce the affidavit regarding the search of Defendants' cell phones by September 26, 2025.  Dkt. No. 88 at 6.  Defendants did not provide the affidavit by the Court deadline.  Instead, they sent a letter by e-mail on September 26, 2025 asking for an extension of time to produce the affidavit.  The Court declined to rule on the motion as it was not properly filed and directed Defendants to properly file the motion by September 29, 2025.  Then, on Saturday, September 27, 2025, even though he was aware Defendants were given permission to file a motion on Monday, Plaintiff moved for sanctions for Defendant's failure to produce the affidavit, which the Court denied.  Dkt. No. 91; *see generally* 30(b)(6) Order.  On September 29, 2025, Defendants properly filed their request for an extension of the September 26 deadline.  Dkt. No. 93.  Finding there was minimal prejudice to Plaintiff, the Court granted Defendants' motion and ordered the affidavit produced by October 1, 2025.  Order dated 9/29/2025.

After conducting the search, Defendants objected to producing responsive text messages

identified in their affidavit, arguing the messages were not responsive to Plaintiff's document requests.  Dkt. No. 103.  On October 7, 2025, Plaintiff moved to compel disclosure of the text messages.  Dkt. No. 99.  The Court granted that motion on October 9, 2025 and required Defendants to produce the text messages by October 14, 2025.   Minute Entry Dated 10/10/2025. During the conference, Plaintiff argued that he was prejudiced because Defendants had not searched for or produced text messages prior to his taking depositions of the Defendants.  *See* Dkt. No. 114 at 19:22–25:20.  The Court declined to issue relief because Plaintiff knew the text messages would be produced after the depositions.  *See* Dkt. No. 114 at 24:6–18.  The Court noted that Plaintiff did not raise any concern with the sequence of discovery until after the depositions were completed. *Id.*  On October 14, 2025, Defendants produced the text messages.  *See* Dkt. No. 102 at 1.  On October 27, 2025, Plaintiff filed the instant motion for sanctions, making the identical argument about timing and prejudice that the Court rejected on October 9, 2025.

### B.  Analysis Under Rule 37(b)(2)

Defendants searched for and produced the messages on Defendants' cell phones consistent with the schedule set by the Court.  As noted above, Plaintiff first moved to compel production of the text messages on October 7, 2025.  The Court granted the motion on October 9, 2025, ordering Defendants to produce the text messages by October 14, 2025.  Defendants did so.  Thus, the Court finds that Defendants did not willfully violate a Court order regarding the production of text messages, and Plaintiff is not entitled to sanctions pursuant to Rule 37(b)(2).[4]

### C.  Analysis Under Rule 26(g)(3) and Rule 37(c) or (e)

---

[4] While Defendants failed to file a timely motion to extend the September 26, 2025 deadline to serve an affidavit related to their search of cell phones, the Court notes it has already excused that failure, denied Plaintiff's prior motion for sanctions, and granted Defendants an extension of that deadline.  *See* 30(b)(6) Order.

Plaintiff argues that Defendants were under an obligation to search for and produce responsive text messages as soon as they received Plaintiff's demand to do so, and they should be sanctioned because they waited until the Court ordered them to do so.  Pl.'s Mot. at 8–10. However, the timing was the result of Defendants interposing good faith objections to the search and production.  Accordingly, the timing of their search and production is substantially justified.

### 1.  Defendants Preserved Relevant ESI.

Defendants were certainly under an obligation to immediately *identify and preserve* potentially discoverable information, even before receiving Plaintiff's discovery demands.  *See*, *e.g.*, *Ellis v. PB Ventilating Systems, Inc.*, 23-CV-4629, 2024 WL 3025975, at *5 (E.D.N.Y. June 17, 2024) (reiterating the standards relating to the duty to preserve ESI).  Defendants have consistently represented and demonstrated that they put litigation holds in place, preserved relevant ESI, and provided Plaintiff with documentation of their preservation efforts.  *See* Dkt. No. 81 at 21:10–22:5; Dkt. No. 115 at 51:17–53:19.  The record corroborates these representations. Defendants have previously filed the litigation hold notices on the docket.  Dkt. No. 85-4.  One of text messages at issue recovered from a defendant's cell phone says that he received "a legal hold" letter in this case.  Dkt. No. 105-1 at 5.  Plaintiff puts forth no evidence to the contrary.  The Court therefore concludes that Defendants sufficiently preserved the data on Defendants' cell phones. As such, Plaintiff is not entitled to sanctions pursuant Rule 37(e).

### 2.  Defendants Were Substantially Justified in Waiting to Search the Cell Phones and Produce Text Messages.

The Court also finds Defendants were substantially justified in their decision to not immediately *search or produce* the preserved ESI considering their objections to the scope and burden of Plaintiff's requests.  Defendants' objections were supported by Magistrate Judge Bloom's March 20, 2025 guidance regarding the scope of ESI.  *See* Dkt. No. 72 at 2.  That Plaintiff

later successfully obtained rulings permitting a search from Judge Marutollo and then the undersigned does not mean that Defendants' objections are unfounded nor made in bad faith. *See*, *e.g.*, *Klein v. Torrey Point Group,* LLC, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (finding that even an "unavailing" reason is substantially justified in the Rule 37 context as long as it is not "unreasonable, frivolous or [based in a] completely unsupportable reading of the law"); *Kosher Sports, Inc. v. Queens Ballpark Co. LLC*, 10-CV-2618, 2011 WL 3471580, *11 (E.D.N.Y. Aug. 5, 2011) (finding the substantially justified standard is satisfied in the Rule 26(g)(3) context where there is "a 'genuine dispute' . . . or if 'reasonable people could differ' regarding the conduct at issue.") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Plaintiff argues Defendants' May 29, 2025 certification of their discovery responses was false because they did not search for and produce text messages at the time of that response. Pl.'s Mot. at 7. Relatedly, Plaintiff argues Defendants' objections were unfounded and asserted only to delay the production. *See* Nov. 19, 2025 Hearing Transcript, Dkt. No. 115, at 17:24—20:21. In support of his motion, Plaintiff cites to cases where parties failed to comply with Court orders or the Federal Rules, their discovery responses were construed to intentionally concealed the existence of information, or they negligently failed to think through the possible sources of discoverable information.[5] *See, e.g.*, *Lava Trading, Inc., v. Hartford Fire Ins. Co.*, 03-CV-7037, 2005 WL 459267, at *15 (S.D.N.Y. Feb. 24, 2005) (party purported to respond to request but delayed production of key e-mails under guise of a "rolling production")*; Aristidou v. Aviation Port Servs., LLC,* 18-CV-4040, 2020 WL 10317398, at *12 (E.D.N.Y. Feb. 21, 2020) (sanctioning

---

[5] Plaintiff also relies on cases that are unrelated to the alleged conduct at issue here. For example, Plaintiff cites *Ying Kuang v. Genzyme Genetics Corp.*, 11-CV-6346, 2012 WL 13059497, at *9 (S.D.N.Y. Nov. 28, 2012), where a party was sanctioned for failing to produce a witness for deposition for four years.

party for representing document productions were complete after multiple court orders compelling production); *Iacovacci v. Brevet Holdings, LLC*, 18-CV-8048, 2023 WL 2631966, at *5 (S.D.N.Y. Mar. 24, 2023) (sanctioning party at summary judgment stage for failing to produce responsive document during discovery); *Capitol Recs., LLC v. Escape Media Grp., Inc.*, 12-CV-6646, 2014 WL 12698683, at *11 (S.D.N.Y. May 28, 2014) (sanctioning party at summary judgment stage for failing to produce identity of witness during discovery in violation of Rule 26(a)).  None of those circumstances are present in this case.

Here, there was no evasion, nor did Defendants mislead Plaintiff or the Court in any way. Rather, Defendants preserved the messages on the subject cell phones, objected on notice to Plaintiff, and then complied with the Court's order to search the phones.  Defendants' decision to refrain from a potentially burdensome and expensive search for responsive messages and production of those messages until after the Court considered their objections, while maintaining transparency with Plaintiff and the Court that they had not yet conducted the search, was substantially justified.  The timely notice to Plaintiff is critical here, because it means he can move to compel Defendants to search the cell phones and make any arguments to the Court regarding the timing of the search and sequence of discovery.

Under these circumstances, the Court finds that until ordered to search the preserved ESI pursuant to reasonable search terms (as it did on July 22, 2025 and August 22, 2025), and then produce the resulting documents (as it did on October 9, 2025), Defendants were reasonably justified in not doing so.  Thus, the Court finds no basis to sanction Defendants under the relevant provisions of Rules 26 or 37.  For these reasons, Plaintiff's motion for sanctions relating to the timing of the production of text messages is denied.

### D. Even if Sanctions Were Appropriate, Plaintiff Is Not Entitled to the Kinds of Sanctions He Requests

Even if Plaintiff were entitled to sanctions, he is not entitled to the kinds of sanctions he proposes in his motion. Although the proposed sanctions vary in level of severity, the Court would decline to issue any of them based on the factors that guide the Court's discretion regarding sanctions. *See supra* at 3.

Importantly, any prejudice in the timing of the production is deeply undercut by Plaintiff's decision to avoid any proactive steps that would have mitigated the prejudice—part of a persistent pattern of conduct in this litigation.[6] *See, e.g.*, *Rienzi & Sons Inc. v. I Buonatavola Sini S.R.L.*, 746 F. Supp. 3d 69, 80–81 (E.D.N.Y. 2024) (finding as harmless a delayed production of a declaration considering a party's failure to make a timely motion to reopen discovery). Plaintiff had ample opportunity to raise the issue of sequence of discovery with the Court. *See* Dkt. No. 81 at 25:15–20. The Court also assured Plaintiff that it would accommodate such concerns in the timing of discovery. *See* Dkt. Nos. 81 5:21–6:14; 85 at 2; 85-2. Despite this opportunity, Plaintiff never asked for the search of the cell phones to be conducted prior to depositions. In fact, Plaintiff encouraged the opposite. In August, knowing Defendants had not yet searched the phones, Plaintiff chose to not only demand depositions before the searches were conducted, he *moved for sanctions* because Defendants did not produce a witness for a deposition on an earlier date, which

---

[6] Examples of this pattern of conduct in other contexts include: (i) Plaintiff's motion to sanctions Defendants for a witness's failure to appear after refusing to change the date despite being told almost an entire month prior that the witness would be out of the country and "on vacation . . . with his grandchildren" (Dkt. Nos. 79; 81 p 13); (ii) Plaintiff's motion to sanction Defendants for failure to serve the affidavit regarding text messages, which he filed on a Saturday despite knowing that the Court gave Defendants leave to properly file a motion for an extension on Monday morning (*See* Dkt. Nos 91; 92); and (iii) Plaintiff's motion to sanction Defendants for recalling a witness because of a purported improper discovery objection after refusing to call the Court to address the dispute before the witness was excused (*See* Dkt. Nos 83; 85; 87; 88).

14

the Court denied.  *See* Dkt. No. 79; Minute Entry dated 08/25/2025.  Plaintiff's push for depositions ahead of document production continued in September, when Defendants' counsel offered to postpone certain depositions given the timing of document productions, and Plaintiff chose not to. *See* Dkt. No. 85-2.

This failure to mitigate the prejudice is further compounded by the minimal nature of the prejudice, as the messages from the phones are at best tangential to the parties' claims and defenses.  *See* Dkt. No. 114 at 17:19–8 (holding the messages do not have strong relevance to the claims and defenses but should be turned over because of minimal burden to Defendants). Therefore, the Court finds this factor weighs against any of Plaintiff's proposed sanctions.

Also, the record suggests lesser sanctions than those proposed would be effective.  As Defendants were upfront about their decision not to search for the texts and then not to produce them, Plaintiff had the opportunity to seek judicial relief (and did) at any point he deemed appropriate.  On the one occasion Defendants did not meet a Court deadline, a reprimand in an Order was sufficient to regain compliant conduct.  *See* 30(b)(6) Order.  This counsels against more severe sanctions.

Finally, Plaintiff's request for a dispositive sanction relating to his alleged wrongful termination or failure to rehire retaliation claim is not supported by the record.  Dispositive sanctions are generally a "disfavored action" in this Circuit.  *Rienzi & Sons Inc.*, 746 F. Supp. 3d at 80 (quoting *Am. Stock Exch. LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002)).  In part, that is because courts prefer that "to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal citations omitted).  Further, "[a] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future."  *Drip Capital Inc. v. JY Imports of NY Inc.*, 348

F.R.D. 536, 564 (E.D.N.Y. 2025) (quoting *Farmer v. Hyde Your Eyes Optical, Inc.*, 13-CV-6653, 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015)). There is additional reason for caution here, because the dispositive sanction would likely resolve in Plaintiff's favor a claim where the Court has expressed skepticism as to its very viability. MTD Order at 25 n.9 ("The Court, however, agrees with Defendants that because Plaintiff resigned his position at Mount Sinai, he cannot claim that termination was an adverse employment action that he suffered."). There is simply no basis for the Court to award Plaintiff such a sanction.

## II.   Plaintiff Will Be Permitted Limited Additional Discovery to Address Any Alleged Prejudice from the Timing of the Text Message Production

Even though sanctions are not appropriate, the Court will permit additional discovery as to the text messages, even though the discovery period has closed. The Court has "broad discretion" as to whether to permit additional discovery. *Carroll v. Trump*, 22-CV-10016, 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023) (internal citations omitted). If permitted additional discovery, Plaintiff seeks only the opportunity to ask one of the defendants, Dr. Navid, some additional questions about these text messages. *See* Dkt. No. 115 at 31:19–22.

The Court finds this to be a reasonable request with little burden on Defendants, as there will already be a continued deposition of Dr. Navid for other reasons. *See* Order dated 11/17/2025; Order dated 11/24/2025. Therefore, Plaintiff will be permitted to also ask questions of Dr. Navid related to the text messages. The process for the deposition will comply with the November 24, 2025 Order granting a continued deposition; except that the questions regarding text messages be directed to the undersigned for review and approval. Plaintiff's questions should be filed via ECF by **December 15, 2025**;[7] Defendants' cross-questions, if any, and any objections to Plaintiff's

---

[7] Plaintiff was made aware on November 19, 2025 of the Court's decision to permit these

questions, should be filed via ECF by **January 5, 2026**; Plaintiff's redirect questions, if any, and any objections to Defendants' cross-questions, should be filed via ECF by **January 12, 2026**; Defendants' recross questions, if any, and any objections to Plaintiff's redirect questions, should be filed via ECF by **January 20, 2026**. Dr. Navid's deposition shall take place no later than **February 20, 2026**. *See* Order dated 11/24/2025.

### III.    Motion for Sanctions Related to the Rule 30(b)(6) Deposition of Defendant Ichan School of Medicine at Mount Sinai

Plaintiff also seeks sanctions related to Defendants' effort to prepare witnesses produced in response to a Court-ordered Rule 30(b)(6) deposition. On September 29, 2025, the Court issued a detailed order compelling a limited Rule 30(b)(6) deposition of Defendant Mount Sinai on topics proportional to the needs of this case, supplementing rather than duplicating the already robust discovery Plaintiff had been provided. *See* 30(b)(6) Order;[8] *see also Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) ("[D]eposition topics should be proportional to the needs of the case, not unduly burdensome and duplicative, and described with 'reasonable particularity.'") (quoting *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 14-CV-09371, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017)). To ensure the depositions were proportional, the Court limited the scope and amount of time permitted for questioning on each topic. *See id.* at 2–9.

Defendants designated two witnesses to testify. Suzette Lawrence, the Director of Legal Operations for the Mount Sinai Health System, was designated to testify as to matters related to ESI retention and search polices, including how they were applied in this case. *See generally*

---

questions and was provided the deadline to submit the questions at that time. *See* Minute Entry dated 11/19/2025; Dkt. No. 115 at 32:2–33:18.

[8] Familiarity with the specifics of that decision is assumed.

Lawrence Deposition Transcript, Dkt. No. 105-3, ("Lawrence Tr."). She sat for a deposition that lasted over three hours. *See id.* Daniel McCabe, the Director of Employee and Labor Relations for Icahn School of Medicine at Mount Sinai, who was also deposed as an individual fact witness, was designated to testify as to various topics related to Defendants' human resources policies, as well as their investigation of and handling of matters related to Plaintiff's specific complaint. *See generally* McCabe Deposition Transcript, Dkt. No. 105-2, ("McCabe Tr."). Mr. McCabe sat for a deposition that lasted seven hours, including a three-hour break to take Ms. Lawrence's deposition. *See id.* Both prepared for their depositions in advance in meetings with counsel, and Mr. McCabe reviewed several documents in advance of his deposition. *See* Pl.'s Mot. at 14, 19, 20. The Court has reviewed the transcripts of both depositions in their entirety.

### A. Legal Standard for Preparation of a Rule 30(b)(6) Witness

Federal Rule of Civil Procedure 30(b)(6) obligates a corporation to prepare one or more witnesses to give binding answers on the corporation's behalf with respect to the noticed subjects. *See* Fed. R. Civ. P. 30(b)(6). Although a deposition under Rule 30(b)(6) "is not designated to be a memory contest," *Equal Emp. Opportunity Comm'n v. Am. Int'l Grp., Inc.*, 93-CV-6390, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994), "the corporate deponent has an affirmative duty to make available [a representative] able to give complete, knowledgeable and binding answers on its behalf." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).

"Rule 37(d)(1)(A)(i) authorizes sanctions where a Rule 30(b)(6) witness is so unprepared that it is 'tantamount to a failure to appear.'" *Harger Da Silva v. New York City Transit Auth.*, 17-CV-4550, 2023 WL 8096925 (E.D.N.Y. Nov. 20, 2023) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). The party seeking sanctions must show that the deponent's inability to testify was "egregious and not merely lacking in desired

specificity in discrete areas." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 94-CV-1942, 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995), *order clarified sub nom.*, 1995 WL 758767 (S.D.N.Y. Dec. 21, 1995).  Even when there is deficient Rule 30(b)(6) testimony, "courts are reluctant to award sanctions . . . when counsel fail to make a good faith effort to resolve the deficiencies or when the application for sanctions appears tactically motivated." *Agniel v. Cent. Park Boathouse LLC*, 12-CV-7227, 2015 WL 463971, at *2 (S.D.N.Y. Jan. 26, 2015).

### B.  Defendants' Preparation of Lawrence and McCabe

Plaintiff asks the Court to find that the efforts to prepare the witnesses were "so stunningly derelict" as to indirectly sabotage the depositions.  Pl.'s Mot. at 20.  However, Plaintiff's own description of counsel and the witnesses' efforts to prepare for the deposition are good faith efforts given the nature and scope of the deposition.

#### 1.  Suzette Lawrence

Plaintiff acknowledges that Ms. Lawrence was prepared "for two hours" by counsel.  Pl.'s Mot. at 14.  Plaintiff characterizes this preparation as insufficient, citing the number of questions to which Ms. Lawrence did not know the answer and that she did not review any "documents or databases to prepare."  *Id.*  Plaintiff argues that her lack of personal knowledge of the subject events means "the need for her to gather additional information prior to [the] deposition was manifest."  *Id.* at 18.

The Court disagrees.  The two hours Ms. Lawrence spent with counsel preparing for the deposition is equal to the entire amount of time permitted by the Court for questioning during her deposition.  *See* 30(b)(6) Order at 9.  That preparation, combined with the witness's expertise, constitutes a good faith effort to prepare her to adequately testify.  As reflected in the transcript of the deposition, the witness provided relevant information to Plaintiff on the topics—even in some

cases where she was unable to answer some questions in the first instance. For example, Ms. Lawrence testified about the process for an ESI search, explaining that Defendants use a contractor, Digital Technology Partners (DTP), to conduct the search and production of ESI as a matter of policy and in this case. Lawrence Tr. at 15:9–20:24. She also testified as to how DTP would search for information specific to this case and what software the contractor would use. *Id.*

Plaintiff points out that Ms. Lawrence did not know the answer to some of his questions, including some details of DTP's specific work in this case. *See* Pl.'s Mot. at 14–16. But, reviewed in context, many of those uncertain answers could also be the result of argumentative or inartful questioning. Additionally, some questioning went well beyond the intended scope of the deposition and of discovery in this matter. For example, Plaintiff's questions to Ms. Lawrence about additional sources of potential ESI, or about messages that can be sent through the medical records system, went beyond the scope of ESI approved by the Court. *See* Lawrence Tr. at 41:23–44:16. Given the understanding that ESI discovery was limited to the search of the cell phones, there is no reason Defendants' counsel should have prepared the witness for those kinds of questions. Therefore, after a careful review of the transcript of her deposition, the Court concludes that Defendants' preparation of Ms. Lawrence was a good faith effort considering the limited scope of the deposition.

### 2. Daniel McCabe

Mr. McCabe, who had also been questioned at length as a fact witness, was prepared by counsel and reviewed documents related to this case. *See* Pl.'s Mot. at 16. This is a good faith effort under the circumstances and considering the limited scope of the deposition. Plaintiff is correct that, despite the steps taken to prepare for the deposition, Mr. McCabe was unable to answer some questions seeking specific details of some steps taken during Defendants'

20

investigation into matters related to Plaintiff.  However, the transcript shows that, overall, Mr. McCabe was clearly familiar with and competent to testify about that investigation, as well as the existence and application of policies and processes that went into it.  *See* McCabe Tr. at 17:19–23:24.  As the Court advised Plaintiff when permitting the depositions, there are situations where witnesses may not know the answer to a question, and the Court cannot force them to remember. *See* 30(b)(6) Order at 7 n.3.  Plaintiff is free to use that testimony, which binds Defendant Mount Sinai, as he deems fit.  But it does not indicate a failure to properly prepare the witness.  Thus, after a careful review of the transcript, the Court finds Defendants prepared Mr. McCabe for the deposition in good faith.  Accordingly, Plaintiff's request for sanctions related to the preparation of the Rule 30(b)(6) witnesses is denied.[9]

### C. Plaintiff Is Not Entitled to Additional Discovery Related to the Rule 30(b)(6) Depositions

The Court invited Plaintiff to propose a brief list of narrowly tailored topics of additional discovery to supplement these depositions.  Dkt. No. 115 at 54:20–55:3.  The purpose was for the Court to consider, as it had in the context of Plaintiff's concerns about text message production, whether to permit some additional discovery to address any alleged prejudice.   Because discovery closed in this matter on October 15, 2025, *see* Minute Entry dated 10/10/2025, Plaintiff was directed to make the requests "proportional to the realities of the case, [and] proportional to where we are in the case with discovery otherwise closed."  Dkt. No 115 at 54:24–55:55:1. The Court further directed Plaintiff that these topics should be ones where he is certain he does not "have the information in some other form."  *Id.* at 62:22–23.

---

[9] Even if sanctions were appropriate, the dispositive sanctions proposed by Plaintiff here are not supported by the record for substantially the same reasons as discussed in Section I, D.

In response to the Court's request, Plaintiff listed 72 proposed topics.  *See* Dkt. No. 116.

Many are duplicative of information that Defendants have already provided to Plaintiff during the

discovery period.  *Id.* at 1 n.1.  Others exceed the scope of permissible discovery.  For example,

Plaintiff's proposed topics include an extensive list of detailed and technical questions designed to

assess whether there are additional sources of ESI, despite Judge Bloom, Judge Marutollo, and the

undersigned's prior rulings that such an extensive ESI search is disproportional to the needs of this

case. *See* Dkt. No. 116.

Plaintiff has already been afforded substantial discovery proportionate to the needs of this

case.  Defendants produced hundreds of documents, several witnesses for deposition (some

multiple times), and searched Defendants' cell phones for messages and produced responsive

messages.  Discovery has been heavily litigated by the parties.  *See* Dkt. Nos. 60–64, 66, 68–83,

85, 87, 88, 90–97, 99–103, 105, 108, 109, 111, 113–116.  Plaintiff had sufficient opportunity

earlier in the litigation to address the issues or seek the discovery covered in the 72 topics, even if

he did not do so.[10]  Nothing in the record justifies disturbing the Court's prior rulings limiting ESI

or limiting duplicative discovery as disproportionate to the needs of the case.  Therefore, the Court

declines to re-open discovery as to Plaintiff's proposed 72 topics.  *See Gonzalez v. United States*,

22-CV-3370, 2023 WL 7102162, *5 (E.D.N.Y. Oct 27, 2023) (A judge is "vested 'with broad

discretion to tailor discovery narrowly and to dictate the sequence of discovery . . . [and] . . . may

limit the time, place and manner of discovery, or even bar discovery altogether on certain

subjects'") (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

---

[10] For example, topic 42 is "[w]hat search terms were used to locate possibly responsive text messages on Navid's cell phone and email?  Who developed and decided on these search terms and when?" Dkt. No. 116 at 5.  Plaintiff had the opportunity to ask these questions, as well as negotiate additional search terms and sources of ESI, prior to the Court's September 10, 2025 deadline to negotiate those terms.

**CONCLUSION**

Plaintiff's motion for discovery sanctions is denied. Plaintiff is permitted to propose limited deposition questions for Dr. Navid related to text messages following the process set forth in this Order. After the continued depositions reflected in this and the 11/24/2025 Order, discovery is complete, and Plaintiff's wage claim and retaliation claims will be ready for consideration on their merits.

**SO ORDERED.**

Dated: Brooklyn, New York
        December 10, 2025

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York